JjSAUNDERS, Judge.
This is an appeal by defendant, Wal-Mart Stores, Inc., et al. (hereinafter WAL-MART), from the trial court’s judgment in favor of L.M. “Tookie” Inzerella (hereinafter TooMe) in the amount of $20,000 for injuries she sustained when she slipped on the defendant’s floor. WAL-MART appeals and contends that the district court erred when it found that: (1) the plaintiff met her burden of proof under Louisiana Revised Statutes 9:2800.6 and that WAL-MART faded to exculpate itself from liability, (2) WAL-MART did not have a right to a jury trial, and (3) TooMe was not comparatively negligent.
For the reasons which follow, we affirm the judgment rendered by the district court.

FACTS

On May 7, 1988, TooMe went to the WAL-MART store in St. Martinville, Louisiana, to return a can of paint that she had purchased a few days earlier. She entered the store at approximately closing time and gave the paint that she wanted to exchange to a WAL-MART employee at the service desk. TooMe went to the paint aisle to pick up the replacement can of paint. As she looked over the cans of paint to choose a color, the store lights started to go off. When the lights in the store dimmed, TooMe hastened back to the service desk to complete her exchange and en route she ^slipped on a slimy substance on the floor. She did not fall to the ground, but was injured as she jerked herself to regain her balance. She claims to have complained about the slippery substance to a WAL-MART employee at the service desk immediately following the incident.
On May 8, 1989, TooMe filed suit alleging in paragraph 19 of her petition that injuries she sustained from the slip exceeded $20,000, but she did not request a jury trial in her petition. In WAL-MART’s answer to plaintiffs petition of August 1, 1990, it denied the allegations of paragraph 19 and requested a jury trial, however, it made no general or specific allegation in its answer or in any other pleadings about the amount of damages at issue. Four days before the trial date, the plaintiff contacted WAL-MART’s counsel and initiated a conference call with the district court judge, Judge Anne Simon. At that time, plaintiff stipulated that the damages she incurred did not exceed $20,000. *331 Pursuant to plaintiffs stipulation, the trial court denied WAL-MART’s request for a jury trial. During the trial, WAL-MART noted on the record its objection to the trial court’s ruling made during that telephone conference, but again made no allegations about the amount of damages.
At the trial held on June 80,1992, and July 1, 1992, Tookie testified concerning the facts of the incident. Her recollection of the time that the slip occurred conflicted with a letter that she wrote to WAL-MART 16 days after the incident. In addition, at trial Tookie described the change in lighting that occurred as she looked for the can of paint, but she did not mention it in the letter or to a WAL-MART claims adjuster to whom she had made a statement concerning the incident. Tookie also stated at trial that she completed a WAL-MART exchange slip and complained about the slime on the floor to a WAL-MART employee, whom she described as being a light-skinned black female. WAL-MART offered evidence that no exchange voucher existed and that none of the employees working on the day of the incident fit the plaintiffs description. Finally, none of the WAL-MART employees who testified, two of whom knew Tookie personally, remembered seeing her at the service desk or anywhere in the store.
WAL-MART’s employees testified concerning the store’s policy and procedures in detecting and remedying hazardous conditions in the store. The employees testified that none of them had either spilled anything on the floor or saw a substance on the floor at the location where the alleged incident occurred.
In her written reasons for judgment in favor of the plaintiff, the judge states:
“Defendant denies that there was any accident. Further, defendant asserts that if there was an incident, no injury resulted. In an effort to prove that contention, the plaintiff was subjected to intense cross examination. The defendant also presented the testimony of the Wa-Mart ls[sic] employees, who outlined the procedures for periodic safety sweeps and ‘zone defense’ three times a day. None has any knowledge of any spill at this time nor that any accident occurred. In all critical portions of her testimony, however, the plaintiff remained unshaken and credible. And her version is consistent with the procedures to which the defense witnesses testified. “It is the opinion of the court that plaintiff has established that an accident occurred, caused by a hazardous condition. The testimony of the Wal-Mart employees corroborates that spills occur. Although vigorously attacked by the defendant, plaintiffs testimony about this particular spill is credible to the court. The manager, and others, confirm that after closing time the lights are dimmed. The defendant contends that decreased lighting should increase a customer’s care, but the plaintiff is quite believable when she describes her feelings; the condition made her hasten so as not to be in the dark.
“The plaintiffs account is corroborated by the testimony about contemporaneous events given by her friends and her doctor. Her friends found her well before May 1 and not well the following day. Her family doctor confirms that she was healthy before the accident and injured immediately following. The court does not consider that her credibility is questionable because her failure to mention lighting in her initial contacts with the defendant; she was concentrated upon her injuries and not the cause of the slip.
“The testimony also establishes, by a preponderance, that the defendant has not exculpated himself by proof of reasonably prudent procedures. The defendant is not under a duty to discover and remedy instantly a hazardous condition, but, in view of the possibility of substances being on the floor, it is the opinion of the court that it is not prudent procedure to dim the lights unlrss [sic] and until the customers have left the aisles.”
Accordingly, the judge ruled in favor of the plaintiff in the amount of $20,000 for all general and special damages.

I. Issues Presented

Whether the district court erred when it found that: (1) the plaintiff met her burden of proof under Louisiana Revised Statutes *332 9:2800.6 and that WAL-MART faded to exculpate itself from liability, (2) WAL-MART did not have a right to a jury trial, and (3) Tookie was not comparatively negligent.
II. Law and Assignment of Error # 1
Whether the district court erred when it found that Tookie met her burden of proof under Louisiana Revised Statutes 9:2800.6 and that WAL-MART failed to exculpate itself from liability.
Pursuant to Louisiana Revised Statutes 9:2800.6, which outlines the burden of proof in claims against merchants, Tookie must prove that:
1) a foreign substance created a hazard on the floor;
2) she stepped in or onto the foreign substance; and,
143) the foreign substance caused her to slip and suffer injury.
See also, Castille v. Great Atlantic & Pacific Tea, 591 So.2d 1299 (La.App. 3d Cir.1991); Estes v. Kroger Co., 556 So.2d 240 (La.App. 2d Cir.1990), writ denied, 559 So.2d 1360 (La.1990). Lastly, the plaintiff must establish causation between the presence of the foreign substance and the slip and fall that caused the injuries. See, Castille, 591 So.2d at 1302. Once the plaintiff establishes that link, the presumption of negligence arises and the burden shifts to the store owner to exculpate himself from the presumption that he was negligent. Castille, supra.
“A store owner exculpates himself by establishing that he exercised such a degree of care that he would have known under most circumstances of the harmful situation. Reasonable protective measures including periodic inspections must be taken to keep the aisles and floors free from substances or objects that may cause customers to fall.” Castille, supra; see, Gonzales v. Winn-Dixie, Inc., 326 So.2d 486 (La.1976). ‘Whether a store’s protective measures have been reasonable is largely dependent on the circumstances of each case, taking into consideration the type and volume of merchandise, the volume of business, and the floor space used for customer service.” Castille, supra; see, Arnold v. T.G. & Y. Stores Co., 466 So.2d 529, 532 (La.App. 3d Cir.1985), writ denied, 470 So.2d 126 (La.1985). The store owner, however, is not the insurer of the customers and he does not have to maintain the entrance ways, aisles and passageways in perfect condition. Castille, supra; see, Stock-well v. Great Atlantic & Pacific, 583 So.2d 1186 (La.App. 1st Cir.1991).
In sum, Tookie must prove that she slipped on a foreign substance at the WAL-MART store and that the slip caused her injuries. To avoid liability, WAL-MART must disprove plaintiff’s case or show that it took reasonable measures to keep the aisles and floors free from substances or objects that may cause customers to slip and injure themselves.
The manifest error rule applies when this court reviews the factual findings of the trial court based on live testimony and depositions. Castille, supra. Consequently, this court may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of fact should not be disturbed upon review, even though we may feel that our own evaluations and inferences are as reasonable. Rosell v. Esco, 549 So.2d 840 (La.1989).
“The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have | ^weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong....
“When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what *333 is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.”
Rosell, 549 So.2d at 844 (citations omitted).
While the plaintiff failed to tell the WAL-MART adjuster about the dimming of the lights and gave somewhat conflicting testimony concerning the time of the incident, we find that omission and variance in her testimony minor and insignificant. We hold that they are particularly insignificant when the record clearly shows that the plaintiffs overall testimony concerning the incident and resulting injuries was consistent with and corroborated by both WAL-MART’s and Tookie’s witnesses. The trial court was impressed with the plaintiffs testimony and specifically noted that it found her testimony credible and unwavering despite WAL-MART’s strong cross-examination. We find no internally inconsistent or implausible testimony, or any documents or objective evidence that a reasonable factfinder would not find the witness’s testimony credible. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings. Therefore, we find no error in the trial court’s ruling that plaintiff met her burden of proof.
The record shows that WAL-MART developed an extensive safety program including training its employees to detect and remedy hazardous conditions within its store. Louisiana law does not require a merchant to maintain the entrance ways, aisles, and passageways in perfect condition, and arguably, WAL-MART’s programs to inspect and keep its floors free from hazardous conditions were reasonably prudent. The effectiveness of WAL-MART’s programs was compromised, however, when it dimmed the lights at closing to hurry customers out of the store. If WAL-MART’s otherwise reasonably prudent safety programs failed to detect a hazardous condition, a customer without the aid of proper lighting may not see or at least have been hampered in seeing an undetected spill. We know that WAL-MART is a high volume | (¡store and naturally would be susceptible to spills caused by curious customers, their often times unescorted children, or overcrowded shelves and stacks.
The district court found under the facts in this case in view of the possibility of substances being on the floor, WAL-MART should not dim its lights unless and until the customers have left the aisles. We find that the trial court did not abuse its discretion in ruling that the testimony at trial established by a preponderance that the defendant did not exculpate itself by proof of reasonably prudent procedures.

Law and Assignment of Error #2

Whether the district court erred when it found that WAL-MART did not have a right to a jury trial.
Until the 1989 enactment of Louisiana Code of Civil Procedure article 893, articles 1731 and 1732 alone governed a litigant’s right to a jury trial. See, May v. Winn Dixie Louisiana, Inc., 613 So.2d 1026 (La. App. 3d Cir.1993), writ denied, 616 So.2d 704 (La.1993). Pursuant to articles 1731 and 1732, a litigant established his right to a trial by jury when the nature and amount of his principal demand exceeded $20,000 exclusive of interest and costs. May, swpra. Formerly, the plaintiff established a right to a jury trial by stating in his petition that the damages he sustained exceeded $20,000. The defendant could contest the claim and resulting right or absence of right to a jury trial by showing that the amount in controversy was not in good faith and either less than or greater than $20,000. See, Nugent v. United States Fidelity & Guar. Co., 551 So.2d 797 (La.App. 3d Cir.1989). Under Louisiana Code of Civil Procedure article 893A.(1), however, the court can no longer look to the plaintiffs petition to decide if he has a right *334 to a jury trial because today “Mo specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand.” May, supra.
To determine whether a right to a jury has been established, LSA-C.C.P. article 893 provides in pertinent part:
If a specific amount of damages is necessary to establish ... the right to a jury trial, ... a general allegation that the claim exceeds or is less than the requisite amount is sufficient. By interrogatory, an opposing party may seek specification of the amount sought as damages, and the response may thereafter be supplemented as appropriate.
Under our interpretation of this article, the article gives either side the right to make a general allegation about damages, and thereby establish the right or the absence of the right to a trial by jury. May, 613 So.2d at 1028. In addition, it gives the opposing party, for example, the defendant in a damage suit, a right to establish by interrogatory |7a specification of the amount of damages whereby it shows its right to a trial by jury. May, supra. “The defendant is in this way protected against a plaintiffs failure to make an allegation that would establish whether or not the right to a jury trial existed.” May, supra.
The plaintiff is not entitled to have defendant’s request for a jury trial stricken, absent a claim that the amount in dispute is less than the jurisdictional amount required for a jury trial, or until plaintiff has proven, at a hearing to strike defendant’s demand for a jury trial, that the good-faith amount in dispute was $20,000 or less. Nugent, supra. Plaintiffs or defendant’s right to a jury trial depends on the good-faith amount in dispute. The party who contends he comes within an exception to the general rule established by LSA-C.C.P. article 1732 must prove it. See, Nugent, supra; Cambridge Corner Corp. v. Menard, 525 So.2d 527 (La.1988).
In this case, four days before the trial the plaintiff stipulated that her damages did not exceed $20,000. The court noted that based on plaintiffs stipulation its award of damages, if any, would not exceed $20,000. As a result of plaintiffs stipulation, defendant’s exposure was limited to $20,000. With the amount of damages limited to $20,000, neither the defendant nor the plaintiff had a right to a jury trial.
Assuming arguendo that the court had accepted the plaintiffs stipulation of damages at $20,000, but made no guarantees that its award would be limited to the amount stipulated, WAL-MART would have had a right under LSA-C.C.P. article 893 to assert and prove its right to a jury trial. In this case, however, the record shows that WAL-MART never exercised its right to make a general allegation that the amount in controversy was greater than $20,000 or to seek specification of the amount sought as damages by interrogatory. In fact, in WAL-MART’s answer to the plaintiffs petition it denies that the damages were greater than $20,000. Under article 893, WAL-MART would have had a right to seek a jury trial at any time during the pendency of the proceedings by showing the requisite amount in controversy. WAL-MART made no other allegation except that it was entitled to a jury trial. Even if WAL-MART had made a general allegation that damages in this case exceeded $20,000 and a hearing would have been required, this court’s careful review of the medical evidence and loss of wages evidence reveals that the trial court would have been correct in finding plaintiffs stipulated claim of $20,000 or less to be in good faith.
In this case, we find the plaintiffs claim to be less than $20,000 and no hearing was required because the amount in dispute was not in controversy. WAL-MART cannot argue that Tookie was somehow duping the court in alleging $20,000 of damages only for the court to find and award damages in an amount greater than ls$20,000. This is not possible under the stipulation because it limits the defendant’s exposure and accrues to his benefit. The defendant only had a right to a jury trial if it could prove the amount in controversy exceeded $20,000.
Law — Assignment of Error # 3
Whether the district court erred when it found that Tookie was not comparatively negligent.
*335 In determining the percentage of fault to cast, if any, on the defendant and/or the plaintiff, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. See, Smith v. Louisiana Farm Bureau Cas. Ins., 603 So.2d 199 (La.App. 3d Cir.1992), writ denied, 605 So.2d 1115 (La. 1992); Socorro v. City of New Orleans, 579 So.2d 931 (La.1991). In Socorro, the Louisiana Supreme Court outlined several other factors which a court may consider in apportioning fault:
“In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.”
579 So.2d at 942.
These factors which may influence the respective degrees of fault are factual considerations, therefore, the manifest error/clearly wrong standard applies to an appellate court’s review of factors that may influence a fact finder’s determination of comparative fault. Smith, 603 So.2d at 201; Socorro, supra; see, also, Phillips v. Hartford Acc. & Indem. Co., 587 So.2d 200 (La. App. 3d Cir.1991), writ denied, 590 So.2d 85 (La.1991). Consequently, this court may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Those standards of review were discussed in great detail earlier in this opinion. Rosell, supra.
After a careful review of the record, we find nothing to suggest that Tookie in any way contributed to her slip on defendant’s floor. The record clearly shows that she was unaware of the slippery spot on the floor. WAL-MART’s dimming of the lights encouraged customers to leave hastily and made customers less able to detect any possible danger. Tookie merely responded to the dimming of the lights as WAL-MART ^expected and did not act carelessly or irresponsibly. We find no error in the district court’s judgment finding WAL-MART solely liable for plaintiffs injuries.

Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of these proceedings are to be paid by defendant-appellant.
AFFIRMED.